CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 28 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

PAMELA HILL,                  )
                                   )
     Plaintiff,               )      Civil Action No. 1:12-cv-00015
                                     )
v.                                 )      **MEMORANDUM OPINION**
                                     )
COMMONWEALTH OF VIRGINIA     )      By: Hon. Glen E. Conrad
DEPARTMENT OF TRANSPORTATION,   )      Chief United States District Judge
                                     )
     Defendant.           )

This case involves a claim of sexual discrimination under Title VII of the Civil Rights Act of 1964. The plaintiff, Pamela Hill, alleges that her employer, the Commonwealth of Virginia Department of Transportation ("VDOT"), failed to promote her because she is a female. The defendant filed a motion for summary judgment under Federal Rule of Civil Procedure 56. For the reasons explained below, the court will deny the defendant's motion.

I.      **Background**

Hill worked for VDOT from October 1993 until September 15, 2010. She is a licensed professional engineer and holds a bachelor's degree in mining engineering. She was first hired by VDOT as a Bridge Inspector in the Bristol District Office. When she left the agency in 2010, she held the position of Engineer Senior in the Constructability Section, making $64,895 per year. Over the course of her employment with VDOT, she was promoted at least twice, and received regular salary increases.

On June 18, 2010, VDOT Bristol District Office announced an opening for the position of Assistant District Administrator for Construction & Preliminary Engineering. The position was restricted to internal VDOT candidates, and nineteen applications were received, including

Hill's. Hill was granted an interview along with eight other applicants. The candidates were interviewed by a two-member panel consisting of Ken Brittle and Connie Hope. Each of the applicants was asked the same five questions, and the interviewers recorded their impressions of the candidates' responses in long-hand. The questions had been delivered to each of the applicants prior to the interview.

Christopher Blevins was chosen for the position over Hill and the other applicants. The selection of Blevins was unanimously agreed to by the interview panel. Hill was told that she was passed over for the promotion on September 15, 2010. VDOT's stated reason for hiring Blevins over Hill was that Blevins performed better in the interview. September 15 was Hill's last day of work at VDOT, and she was approved for short-term disability leave on that day. She later transitioned to long-term disability and is now receiving disability benefits from the Social Security Administration.

In November 2010, Hill filed a charge with the Equal Employment Opportunity Commission alleging that VDOT had discriminated against her on the basis of her gender. Hill then filed the instant lawsuit, alleging in her complaint that VDOT unlawfully failed to promote her based on her sex in violation of Title VII of the Civil Rights Act. She claims that she was the more qualified candidate for the Assistant Director position, and that the decision to hire Blevins was part of a pattern of sexual discrimination imposed by VDOT employees.

## II.    Standard of Review

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

2

248 (1986). In evaluating whether a genuine issue exists, courts must construe all facts and reasonable inferences in the light most favorable to the nonmovant. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 299 (4th Cir. 2008).

## III. Discussion

Title VII makes it unlawful for an employer to discriminate against an individual employee on the basis of that individual's sex. See 42 U.S.C. § 2000e-2(a)(1). A plaintiff may attempt to show unlawful discrimination through either direct or indirect evidence. Hill presents no direct evidence of discrimination, and therefore must proceed under the burden-shifting paradigm first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In cases utilizing the McDonnell Douglas framework, plaintiffs must first set out a prima facie case of discrimination. Id. at 802; see also Vaughn v. Metrahealth Cos., 145 F.3d 197, 200 (4th Cir. 1998). To make out a prima facie case, Hill must show that "(1) [s]he belongs to a protected class; (2) [s]he suffered an adverse employment action; (3) at the time of the adverse action, [s]he was performing h[er] job at a level that met h[er] employer's legitimate expectations and was qualified for the promotion; and (4) [s]he was rejected under circumstances giving rise to an inference of unlawful discrimination." Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011) (citing Taylor v. Va. Union Univ. 193 F.3d 219, 230 (4th Cir. 1999)). The defendant does not argue that Hill has failed to satisfy any of these factors, and the court concludes that she has in fact met this "relatively modest" standard. Wesley v. Arlington County, 354 Fed. App'x. 775, 778 (4th Cir. 2009) (unpublished) (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003) (internal quotations and citations omitted)).

With a prima facie case established, the "burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hill v. Lockheed

3

Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). If the employer then satisfies

its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of

the evidence that the employer's stated reasons were not its true reasons, but were a pretext for

discrimination." Adams, 640 F.3d at 558 (quoting Hill 354 F.3d at 285); see also Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dept. of Community Affairs

v. Burdine, 450 U.S. 248, 256 (1981). A plaintiff who alleges a failure to promote can "prove

pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that

otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Sav.

Bank, 434 F.3d 249, 259 (4th Cir. 2006). The plaintiff must, however, adduce evidence

sufficient for a reasonable juror to find "both that the [employer's] reason was false, and that

discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

In so doing, a showing that the employer's stated justification was false may create an

inference that discrimination was the real reason for the failure to promote. Reeves, 530 U.S. at

147. In Reeves, the Supreme Court held that "[t]he factfinder's disbelief of the reasons put

forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity)

may, together with the elements of the prima facie case, suffice to show intentional

discrimination." Id. The United States Court of Appeals for the Fourth Circuit has elaborated on

Reeves and held that "a plaintiff in a failure to promote case is not necessarily required to meet

the test . . . that a plaintiff 'must establish that she was the better qualified candidate for the

position sought.'" Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir.

2005) (citation omitted); see also Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639,

648 (4th Cir. 2002) ("If plaintiffs were required to show they were superior on the criteria chosen

at trial by their employers, rather than being free to show that the criteria were not the ones

4

actually used, the McDonnell Douglas framework would become a shield for employers rather than a tool to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.").

In this case, the sole reason offered by the defendant for why Blevins was hired over Hill was that Blevins performed better in his interview. Ms. Hope and Mr. Brittle submitted declarations acknowledging that each of the eight candidates interviewed by VDOT possessed the technical skills required for the position, and that the decision was based solely on the candidates' responses during the interview. (Docket Nos. 10-3, 10-4.) VDOT prepared a written summary of Hill's interview, which outlines her employment history and qualifications for the position, and then offers a three-sentence review of her interview performance. It states that Hill's answers to the interview questions failed to reveal her knowledge and experience in construction while she worked as an Acting Area Construction Engineer for various counties. The summary also states that her answers "were vague and lacked clarity," and that in spite of her supervisory experience, she "failed to give pertinent examples of leadership for the level of this position." (Docket No. 10-3, at 8.) VDOT prepared a similar summary of Blevins' interview in response to Hill's EEOC charge. It noted that the interview panel "described Mr. Blevins as having provided examples of innovative solutions and critical decision making as well as how he has worked through difficult employee relations issues. The assessment of the panel was that Mr. Blevins was able to highlight his negotiation skills and management style." (Docket No. 10-3, at 10.)

Hill argues that the evidence before the court is sufficient to support a finding that she was a more qualified candidate than Blevins. The job posting listed a Bachelor's Degree in Civil Engineering or related field experience as a preferred qualification. Hill has a degree in Mining

5

Engineering Technology and worked at VDOT for roughly seventeen years. Over the course of her employment, she was promoted twice, and held a supervisory position where she was in charge of at least thirteen subordinates. From 2006 on, Hill worked in the Constructability Division, serving multiple terms as Acting Area Construction Engineer for Wise, Buchanan, and Dickenson counties. In this position, she supervised a Construction Manager for each county, as well as multiple Construction Inspectors in each location. Hill states that she served in these positions for a total of more than three years, switching between the different locations.

Blevins' employment history and qualifications are not entirely clear as VDOT does not argue that Blevins was more qualified for the position—at least not with respect to any qualifications beyond his interview performance. He does not possess a college degree, but is a licensed professional engineer. Hill stated in her deposition that Blevins, like herself, served as an Acting Area Construction Engineer, but did so only in one county and for only one six-month stretch, compared to her three-plus years of experience in that position. Further, she stated that Blevins had only three or four years of management experience compared to her nearly two decades worth of experience managing VDOT employees.[*]

---

[*] Hill also argues that her employment experience with VDOT was rife was sexually discriminatory behavior from her co-employees and supervisors, including demeaning conduct from Blevins himself. Her testimony includes statements that male employees hung posters depicting nude females in their office cubicles which Hill was forced to view. She also alleges that she was forced to perform certain janitorial tasks, such as picking up cigarette butts and making coffee, that male employees, including those she supervised, were not asked to do. Further, she alleges that numerous male employees, including Blevins, demeaned her through verbal accusations and a general belief that women could not perform certain managerial positions as well as men. In 2005, Hill filed a grievance with VDOT alleging sexually discriminatory behavior on the part of some of her co-employees and supervisors. Hill testified that, as an outcome of the grievance, Blevins could no longer be employed in a position directly supervising Hill. Hill argues that this behavior represents a pattern and practice of sexually discriminatory actions by VDOT employees, and indicates that the decision not to hire Hill was based on her sex. The Fourth Circuit has approved the use of such evidence as a means of proving claims of individual discrimination under the McDonnell Douglas framework. See Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760-61 (4th Cir. 1998). However, Hill's allegations rest entirely on her own uncorroborated and nonspecific reports of mistreatment. Allegations that are "[un]substantiated by accounts of specific dates, times or circumstances are too general" to properly support a discrimination claim. E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 677 (4th Cir. 2011); see also Gilliam v. South Carolina Dep't of Juvenile Justice, 474 F.3d 134, 143 (4th Cir. 2007) ("[G]eneral assertions, standing alone, are [simply] insufficient to sustain an actionable Title VII claim.").

The court finds that VDOT's single, entirely subjective criterion for the hiring decision fails to adequately support the defendant's motion for summary judgment. In doing so, the court is mindful that it is the plaintiff's burden to raise a genuine question as to whether the stated hiring justification was pretexual. However, under the record submitted by the parties, the court cannot find that the defendant has foreclosed the plaintiff's allegations of pretext.

As noted above, in order to show pretext, Hill need not prove that she was a more qualified candidate than Blevins. It is sufficient for her to show that VDOT's justification was false or "unworthy of credence." Burdine, 450 U.S. at 256. Further, under the summary judgment standard, all that Hill must do at this stage is raise a genuine question of fact as to the veracity of VDOT's justification. Hill's discussion of her relevant qualifications is sufficient in this respect, particularly because VDOT's explanation of its nondiscriminatory reason—that Blevins performed better in the interview—is both entirely subjective and meagerly explained.

In so holding, the court notes the numerous cases from within this Circuit that highlight the importance of interviews and other subjective criteria in the hiring process. See, e.g., Adams v. Trustees of the Univ. of North Carolina-Wilmington, 640 F.3d 550, 559-60 (4th Cir. 2011) (noting the subjectivity inherent in academic tenure decisions); Hux v. City of Newport News, Virginia, 451 F.3d 311, 319 (4th Cir. 2006) (noting the importance of face-to-face interviews to the hiring process); Malghan v. Evans, 118 Fed. App'x. 731, 732 (4th Cir. 2004) (unpublished) (approving of the use of subjective criteria such as interviews as part of a legitimate nondiscriminatory hiring justification). The court also appreciates that Title VII was not intended to create within the judiciary "super personnel department[s] weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (citations omitted). However, under the

7

record before it, the court is compelled to hold that VDOT has failed to present a sufficient nondiscriminatory reason for choosing Blevins over the plaintiff.

Other circuits have held that the use of subjective criteria alone may give rise to an inference of pretext. See Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1136, 1145 (10th Cir. 2009) (noting that there is a level of subjectivity inherent in any interview process, the court will "'infer pretext . . . only when the criteria on which the employers ultimately rely are entirely subjective in nature'" (quoting Jones v. Barnhart, 349 F.3d 1260, 1267 (10th Cir. 2003) (emphasis added))); Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 681 (5th Cir. 2001) (holding at the prima facie case stage an employer "may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory") (quoting Crawford v. Western Elec. Co., 614 F.2d 1300, 1315 (5th Cir. 1980)); see also Bell v. Bolger, 708 F.2d 1312, 1319-20 (8th Cir. 1983) ("[S]ubjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse.").

Within the Fourth Circuit, cases condoning the use of subjective criteria as evidence of nondiscriminatory hiring justifications have also cited additional, objective explanations for the employers' decisions. For example, in Hux, the plaintiff's poor interview performance was merely one of four factors relied on by the employer in explaining its decision to promote another candidate. In addition to the interviews, the employer also considered—and explained— the employee's poor work performance and behavior problems, her lack of experience relative to other candidates, and her significant leave time usage. Hux, 451 F.3d at 318-19. See also Anderson, 406 F.3d at 269-70 (approving the use of interviews to help rank candidates based on

8

ten specific core and functional competencies listed in the job description); Malghan, 118 Fed. App'x. at 732 (interviews only one piece of a larger, numerical ranking system).

Even under the McDonnell Douglas framework, the party moving for summary judgment still retains the burden of showing that there is no issue of material fact upon which reasonable jurors could base a verdict for the nonmoving party. Simply put, the defendant has failed to meet that burden here. The entire motion for summary judgment rests upon two very brief interview summaries, one which was prepared only after Hill filed a charge with the EEOC. It reflects a single, entirely subjective hiring criterion that, if accepted, would allow employers unchallengeable authority to explain away employment decision. Moreover, the defendant has offered scant support—a few sentences in an interview summary—that this criterion was actually considered or relied on in a meaningful way. Aside from briefly noting how Blevins' answers highlighted his management abilities, the defendant has not even attempted to show that the interview reflected how Blevins' experience, qualifications, and functional capacity made him a better candidate for the position. The difficulty, if not impossibility, of evaluating the truthfulness of such a subjective and abstract justification, combined with the scant explanation of how the interviews were indicative of job performance, counsels in favor of a finding that Hill has met her burden of establishing a question of fact as to whether VDOT's proffered reason is pretextual. Such an amorphous standard, and one supported only by a few brief sentences of explanation, surely cannot suffice to satisfy an employer's burden in offering a legitimate nondiscriminatory reason. Holding so would improperly allow employers to use "the McDonnell Douglas framework [as] a shield for employers rather than a tool" that offers employees "a full and fair opportunity to demonstrate pretext." Dennis, 290 F.3d at 648.

9

In concluding, the court reiterates its awareness of the important role interviews and other subjective criteria may play in hiring decisions, and its appreciation that trial may reveal a great deal of proof that VDOT had legitimate, nondiscriminatory reasons for hiring Blevins over Hill. However, as the record currently stands, the court is simply unable to conclude that the cursory justification offered by the defendant is not pretext for unlawful motivation.

## IV.    Conclusion

For the foregoing reasons, the court will deny the defendant's motion for summary judgment, finding that a genuine issue of material fact exists as to whether VDOT unlawfully discriminated against the plaintiff on the basis of her sex.

The Clerk is directed to send certified copies of this order to all counsel of record.

ENTER: This ___28th___ day of January, 2013.

_____
Chief United States District Judge

10